IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PHARMASEPTIC, INC. )<br>)<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>)<br>ADVANCED TECHNOLOGY MATERIALS, )<br>INC.;  and ATMI BVBA a/k/a ATMI )<br>PACKAGING BVBA f/k/a ATMI PACKAGING, )<br>N.V., )<br>)<br>)<br>Defendants. ) | Civil Action No: 2:13-cv-1925<br><br><br><br><br><br><br><br><br><br>DECEMBER 30, 2013 |

The Plaintiff, PharmAseptic, Inc, by and through its undersigned attorneys for its complaint herein allege up on information and belief as follows:

**PARTIES**

1. At all relevant times herein, Plaintiff, PharmAseptic, Inc., is company duly organized and existing under the laws of the State of Indiana, with its headquarters and principal place of business at 1920 Jacobs Lane, Chesterton, Indiana.

2. At all relevant times herein, Defendant, ADVANCED TECHNOLOGY MATERIALS, INC., ("ATMI Opco") is a company organized and existing under the laws of the State of Delaware with its principal place of business at 7 Commerce Drive, Danbury, Connecticut.

3. At all relevant times herein, Defendant, ATMI BVBA a/k/a ATMI PACKAGING BVBA f/k/a ATMI PACKAGING, N.V., ("ATMI Packaging") is a private company with limited liability organized and existing under the laws of the Kingdom of Belgium, having a place of business at Reugelstraat 2, 3320 Hoegaarden, Belgium.

4. At all relevant times herein, ATMI Packaging operated as a subsidiary of ATMI Opco.

1

## JURISDICTION AND VENUE

5. Jurisdiction of this Court is founded upon 28 U.S.C. §1332(a)(1) in that there is complete diversity of citizenship between the plaintiff and the defendants herein, and the amount in controversy exceeds the sum of seventy-five thousand dollars ($75,000.00), exclusive of costs and interest.

6. Venue is laid in this Judicial District pursuant to 28 U.S.C. §1391(b) and (c) based on the defendant being subject to personal jurisdiction based on their contacts with and activities in the State of Connecticut.

## FACTUAL BACKGROUND

7. The Plaintiff represents suppliers in the sale of equipment and consumable products for sterile and aseptic processes in the pharmaceutical and biotech industries.

8. The Plaintiff has many years of direct sales experience, unique product knowledge and hard earned customer confidence.

9. Since approximately 2010, the Plaintiff has represented the Defendants in the sales of some of their pharmaceutical and biotech products.

10. On or about March 15, 2010, the Plaintiff and Defendants, under the name ATMI Packaging, N.V., entered into a sales representation agreement ("2010 Sales Agreement") (Exhibit A) with the goal that the Plaintiff would procure sales of the Defendant's products in a territory that included an entity known as Boehringer-Ingelheim Vetmedica in Fort Dodge, Iowa.

11. Prior to 2010, the Defendants, through their own efforts, had not been able to obtain Boehringer-Ingelheim Vetmedica in Fort Dodge, Iowa as a purchaser of their pharmaceutical and biotech products.

12. Pursuant to the 2010 Sales Agreement, the Defendants would pay the Plaintiff commissions in the amount of 15% of their Gross Revenues on Consumable products and 10% of their Gross Revenues on Equipment sold, delivered and invoiced to Boehringer-Ingelheim Vetmedica and other customers within the Plaintiff's sales territory for Defendants.

13. Pursuant to the 2010 Sales Agreement, the Defendants were solely responsible for determining pricing and providing quotations and pricing to Boehringer-Ingelheim Vetmedica and other customers within the Plaintiff's sales territory for Defendants.

14. Pursuant to the 2010 Sales Agreement, the Plaintiff, using its skill, expertise and experience, made sales of the Defendants' products to Boehringer-Ingelheim Vetmedica.

15. As a result of the Plaintiff's diligent sales and marketing efforts, the Defendants expanded their customer base and received other benefits from the Plaintiff's sale of their products to Boehringer-Ingelheim Vetmedica and other customers within the Plaintiff's sales territory for Defendants.

16. Pursuant to the terms of the 2010 Sales Agreement, the Defendants owed and continue to owe commissions to the Plaintiff in the amount of 15% of the gross sales of certain products sold, delivered and invoiced to Boehringer-Ingelheim Vetmedica.

17. Pursuant to the 2010 Sales Agreement, commission payments from the Defendants to the Plaintiff were to be made on or before the 20th day of the month following the month during which the Defendants received payment from the customer purchasing their products sold by the Plaintiff.

18. On or about June 3, 2011, June 2011, at approximately the expiration of the 2010 Sales Agreement, the Plaintiff and Defendants, again under the name ATMI Packaging, N.V., entered into a second sales representation agreement ("June 2011 Sales Agreement") (Exhibit B).

19. Pursuant to the June 2011 Sales Agreement, the Defendant would pay the Plaintiff commission in the amount of 15% of their Gross Revenues on Consumable products and 10% of their Gross Revenues on Equipment sold, delivered and invoiced to Boehringer-Ingelheim Vetmedica and other customers within the Plaintiff's sales territory for Defendants.

20. Pursuant to the June 2011 Sales Agreement, commission payments from the Defendants to the Plaintiff were to be made on or before the 20th day of the month following the month during which the Defendants received payment from the customer purchasing their products sold by the Plaintiff.

21. Pursuant to the June 2011 Sales Agreement, the Defendants were solely responsible for determining pricing and providing quotations and pricing to Boehringer-Ingelheim Vetmedica and other customers within the Plaintiff's sales territory for ATMI.

22. Pursuant to the June 2011 Sales Agreement, the Plaintiff, using its skill, expertise and experience, made sales of the Defendants' products to Boehringer-Ingelheim Vetmedica.

23. As a result of the Plaintiff's diligent sales and marketing efforts, the Defendants continued to enjoy an expanded customer base and other benefits derived from the Plaintiff's sale of their products to Boehringer-Ingelheim Vetmedica and others.

24. Pursuant to the terms of the June 2011 Sales Agreement, the Defendants owed and continue to owe commissions to the Plaintiff in the amount of 15% of the gross sales of certain products sold, delivered and invoiced to Boehringer-Ingelheim Vetmedica.

25. On or about October 27, 2011, the Plaintiff and Defendants, again under the name ATMI Packaging, N.V., entered into a third sales representation agreement ("October 2011 Sales Agreement") (Exhibit C).

26. Pursuant to the October 2011 Sales Agreement, the Defendants would pay the Plaintiff commission in the amount of 15% of their Gross Revenues on Consumable products and 10% of their Gross Revenues on Equipment sold, delivered and invoiced to Boehringer-Ingelheim Vetmedica and other customers within the Plaintiff's sales territory for Defendants.

27. Pursuant to the October 2011 Sales Agreement, the Defendants were solely responsible for determining pricing and providing quotations and pricing to Boehringer-Ingelheim Vetmedica and other customers within the Plaintiff's sales territory for Defendants.

28. Pursuant to the October 2011 Sales Agreement, the Plaintiff, using its skill and expertise, made sales of the Defendants' products to Boehringer-Ingelheim Vetmedica and other customers within the Plaintiff's sales territory for Defendants.

29. As a result of the Plaintiff's diligent sales and marketing efforts, the Defendants continued to enjoy an expanded customer base and other benefits derived from the Plaintiff's sale of their products to Boehringer-Ingelheim Vetmedica and other customers within the Plaintiff's sales territory for Defendants.

30. Pursuant to the terms of the October 2011 Sales Agreement, the Defendants owed and continue to owe commissions to the Plaintiff in the amount of 15% of the gross sales of certain products sold, delivered and invoiced to Boehringer-Ingelheim Vetmedica.

31. Pursuant to the October 2011 Sales Agreement commission payments from the Defendants to the Plaintiff were to be made on or before the 20th day of the month following the month during which the Defendants received payment from the customer purchasing their products sold by the Plaintiff.

32. Prior to July 2012, the Defendants had paid to the Plaintiff all of the commissions due and owing pursuant to the Sales Agreements, including commissions from the sales of products to Boehringer-Ingelheim Vetmedica.

33. In or about July 2012, the Defendants unilaterally, stopped paying commissions on certain Product numbers sold to Boehringer-Ingelheim Vetmedica.

34. The Defendants advised the Plaintiff that it would set new prices in September 2012 that would include full commissions for the Plaintiff.

35. The Plaintiff acted in reliance on the Defendants' prior history of timely payments and representation that commissions would be paid based upon the Defendants' higher Product pricing and continued to perform under the terms of the Sales Agreements.

36. As the pattern and practice of dealing prior to that date established a 15% commission schedule based upon Gross Sales and based on the Defendants' prior performance and assurances, the Plaintiff had no reason to believe that the Defendants would fail to pay the commissions after they had adjusted their Product pricing.

37. In or before September 2012, ATMI Packaging, N.V., theretofore a public company organized and existing under the laws of the Kingdom of Belgium,

reorganized as ATMI BVBA, a private company with limited liability organized under the laws of the Kingdom of Belgium.

38. In or about September 2012, the Plaintiff and Defendants, under the name ATMI Packaging BVBA, entered into a fourth sales representation agreement ("September 2012 Sales Agreement") (Exhibit D).

39. Pursuant to the September 2012 Sales Agreement, the Defendants would pay the Plaintiff commission in the amount of 15% of their Gross Revenues on Consumable products and 10% of their Gross Revenues on Equipment sold, delivered and invoiced to Boehringer-Ingelheim Vetmedica and other customers within the Plaintiff's sales territory for Defendants.

40. Pursuant to the September 2012 Sales Agreement, the Defendants were solely responsible for determining pricing and providing quotations and pricing to Boehringer-Ingelheim Vetmedica and other customers within the Plaintiff's sales territory for Defendants.

41. Pursuant to the September 2012 Sales Agreement, the Plaintiff, using its skill, expertise and experience, made sales of the Defendants' products to Boehringer-Ingelheim Vetmedica and other customers within the Plaintiff's sales territory for Defendants.

42. As a result of the Plaintiff's diligent sales and marketing efforts, the Defendants continued to enjoy an expanded customer base and other benefits derived from the Plaintiff's sale of their products to Boehringer-Ingelheim Vetmedica and other customers within the Plaintiff's sales territory for Defendants.

43. Pursuant to the terms of the September 2012 Sales Agreement, the Defendants owed and continue to owe commissions to the Plaintiff in the amount of 15% of the gross sales of certain products sold, delivered and invoiced to Boehringer-Ingelheim Vetmedica.

44. Pursuant to the September 2012 Sales Agreement commission payments from the Defendants to the Plaintiff were to be made on or before the 20th day of the month following the month during which the Defendants received payment from the customer purchasing their products sold by the Plaintiff.

45. On or about February 21, 2013, the Defendants, under the name Advanced Technology Materials, Inc., and the Plaintiff entered into a fifth Sales

6

Representation Agreement ("February 2013 Sales Agreement")(Exhibit E) for a term of one year.

46. Pursuant to the February 2013 Sales Agreement, the Defendants would pay the Plaintiff commission in the amount of 15% of their Gross Revenues on Consumable products and 10% of their Gross Revenues on Equipment sold, delivered and invoiced to Boehringer-Ingelheim Vetmedica and other customers within the Plaintiff's sales territory for Defendants.

47. Pursuant to the February 2013 Sales Agreement, for orders placed on or after February 21, 2013, where the product is negotiated and sold by the Plaintiff and the Defendants below List Price, the Defendants are allowed to negotiate the Plaintiff's commission for reduced commission rates.

48. Pursuant to the February 2013 Sales Agreement, the Defendants are solely responsible for determining pricing and providing quotations and pricing to Boehringer-Ingelheim Vetmedica and other customers within the Plaintiff's sales territory for Defendants.

49. Pursuant to the February 2013 Sales Agreement, the Plaintiff using its skill and expertise, has made sales of the Defendants' products to Boehringer-Ingelheim Vetmedica and other customers within the Plaintiff's sales territory for Defendants.

50. The Defendants presented the February 2013 Sales Agreement with a new sliding commission scale in Appendix B that would pay commission to the Plaintiff based upon the pricing and cost model tied to the Defendants' profit margin.

51. The past Sales Agreements did not contain any such clause that would pay commission to the Plaintiff based upon the pricing and cost model tied to the Defendants' profit margin.

52. The Defendants deprived the Plaintiff of any knowledge of the pricing and costs models and profit margins for the custom Products sold to Boehringer-Ingelheim Vetmedica at the time the parties executed the February 2013 Sales Agreement.

53. The Defendants retained sole authority to set the pricing and cost models for custom Products sold to Boehringer-Ingelheim Vetmedica at the time the parties executed the February 2013 Sales Agreement.

54. As a result of the Plaintiff's diligent sales and marketing efforts, the Defendants continue to enjoy an expanded customer base and other benefits from the Plaintiff's sale of their products to Boehringer-Ingelheim Vetmedica and other customers within the Plaintiff's sales territory for Defendants.

55. Pursuant to the terms of the February 2013 Sales Agreement, the Defendants owe and continue to owe commissions to the Plaintiff in the amount of 15% of the gross sales of certain products sold, delivered and invoiced to Boehringer-Ingelheim.

56. Commission payments from the Defendants to the Plaintiff are to be made on or before the 20th day of the month following the month during which the Defendants receives payment from the customer purchasing their products sold by the Plaintiff.

57. The Plaintiff continues to sell the Defendants' products pursuant to the February 2013 Sales Agreement.

58. On December 23, 2013, ATMI, Inc., the parent company of Defendants, filed a Form 8-K (Exhibit F) with the U.S. Securities and Exchange Commission announcing an agreement to sell ATMI Packaging, including all of its assets and liabilities, and assets of ATMI Opco, to Pall Corporation, a company organized and existing under the laws of the State of New York.

59. Pursuant to such agreement to sell, Pall Corporation may assume Defendants' liability to Plaintiff during the pendency of this litigation.

**COUNT ONE** **(Breach of Contract for the 2010 Sales Agreement)**

60. Paragraphs 1-59 are incorporated by reference as if fully set forth herein.

61. In approximately July 2012, the Defendants unilaterally issued new sales and commission guidelines to the Plaintiff, different from those stated in the 2010 Sales Agreement.

62. Pursuant to the terms of the 2010 Sales Agreement, changes to commissions had to be negotiated between the Defendants and the Plaintiff.

63. The Plaintiff did not bargain for or negotiate any new sales and/or commission guidelines with the Defendants regarding the 2010 Sales Agreement.

64. By unilaterally issuing new sales and commission guidelines, the Defendants deprived the Plaintiff of its commissions due and owing.

65. The Defendants have failed to pay to the Plaintiff commissions due and owing pursuant to the 2010 Sales Agreement.

66. As a direct and proximate result of Defendants' breaches of contract, the Plaintiff has sustained damages including monetary damages and irreparable loss and harm.

**COUNT TWO (Breach of Contract for the June 2011 Sales Agreement)**

67. Paragraphs 1-67 are incorporated by reference as if fully set forth herein.

68. In approximately July 2012, the Defendants unilaterally issued new sales and commission guidelines to the Plaintiff, different from those stated in the June 2011 Sales Agreement.

69. Pursuant to the terms of the June 2011 Sales Agreement, changes to commissions had to be negotiated between the Defendants and the Plaintiff.

70. The Plaintiff did not bargain for or negotiate any new sales and/or commission guidelines with the Defendants regarding the June 2011 Sales Agreement.

71. By unilaterally issuing new sales and commission guidelines, the Defendants deprived the Plaintiff of its commissions due and owing.

72. The Defendants have failed to pay to the Plaintiff commissions due and owing to the Plaintiff pursuant to the terms of the June 2011 Sales Agreement.

73. As a direct and proximate result of Defendants' breaches of contract, the Plaintiff has sustained damages including monetary damages and irreparable loss and harm.

**COUNT THREE** (Breach of Contract for the October 2011 Sales Agreement)

74. Paragraphs 1-73 are incorporated by reference as if fully set forth herein.

75. In approximately July 2012, the Defendants unilaterally issued new sales and commission guidelines to the Plaintiff, different from those stated in the October 2011 Sales Agreement.

76. Pursuant to the terms of the October 2011 Sales Agreement, changes to commissions had to be negotiated between the Defendants and the Plaintiff.

77. The Plaintiff did not bargain for or negotiate any new sales and/or commission guidelines with the Defendants regarding the October 2011 Sales Agreement.

78. By unilaterally issuing new sales and commission guidelines, the Defendants deprived the Plaintiff of its commissions due and owing.

79. The Defendants have failed to pay to the Plaintiff commissions due and owing to the Plaintiff pursuant to the terms of the October 2011 Sales Agreement.

80. As a direct and proximate result of Defendants' breaches of contract, the Plaintiff has sustained damages including monetary damages and irreparable loss and harm.

**COUNT FOUR** (Breach of Contract for the September 2012 Sales Agreement)

81. Paragraphs 1-80 are incorporated by reference as if fully set forth herein.

82. Pursuant to the terms of the September 2012 Sales Agreement, changes to commissions had to be negotiated between the Defendants and the Plaintiff.

83. During the term of the September 2012, the Plaintiff did not bargain for or negotiate any new sales and/or commission guidelines with the Defendants and continued operating pursuant to the terms of the September 2012 Sales Agreement.

84. The Defendants have failed to pay to the Plaintiff commissions due and owing to the Plaintiff pursuant to the terms of the September 2012 Sales Agreement.

85. As a direct and proximate result of Defendants' breaches of contract, the Plaintiff has sustained damages including monetary damages and irreparable loss and harm.

## COUNT FIVE (Breach of Contract for the February 2013 Sales Agreement)

86. Paragraphs 1-85 are incorporated by reference as if fully set forth herein.

87. Pursuant to the terms of the February 2013 Sales Agreement, changes to commissions had to be negotiated between the Defendants and the Plaintiff.

88. During the term of the February 2013 Sales Agreement, the Plaintiff did not bargain for or negotiate any new sales and/or commission guidelines with the Defendants and continued operating pursuant to the terms of the February 2013 Sales Agreement.

89. The Defendant have failed to pay to the Plaintiff commissions due and owing to the Plaintiff pursuant to the terms of the February 2013 Sales Agreement.

90. As a direct and proximate result of Defendants' breaches of contract, the Plaintiff has sustained damages including monetary damages and irreparable loss and harm.

91. As Boehringer-Ingelheim Vetmedica books additional orders as a result of the Plaintiff's sales efforts, the amounts due and owing to the Plaintiff will increase.

## COUNT SIX (Unjust Enrichment)

92. Paragraphs 1-91 are incorporated by reference as if fully set forth herein.

93. The Plaintiff provided its expertise, experience and sales services to the Defendant pursuant to the 2010 Sales Agreement, June 2011 Sales Agreement, October 2011 Sales Agreement, September 2012 Sales Agreement and February 2013 Sales Agreement (collectively "Sales Agreements").

94. The Defendants enjoyed and continues to enjoy an expanded customer base and financial benefits as a result of the Plaintiff's sales pursuant to the Sales Agreements.

95. Upon information and belief, such financial benefits include some portion of the $185,000,000.00 price to be paid by Pall Corporation to ATMI Opco for its assets and to the shareholders of ATMI Packaging.

96. Despite benefitting from the repeat and ongoing sales generated by the Plaintiff, the Defendants have failed to pay to the Plaintiff commissions due and owing to the Plaintiff pursuant to the Sales Agreements for sales to Boehringer-Ingelheim Vetmedica and have retained those proceeds for themselves.

97. Further, the Defendants set their cost and pricing model for their custom Products to Boehringer-Ingelheim Vetmedica such that they would not have to pay commissions to the Plaintiff despite permitting the Plaintiff to make sales and expend considerable effort in marketing their Products.

98. As a result of the Defendants' failure to pay commissions owed to the Plaintiff, the Plaintiff has suffered damages and Defendants have been unjustly enriched.

**COUNT SEVEN (Negligent Misrepresentation)**

99. Paragraphs 1-98 are incorporated by reference as if fully set forth herein.

100. In approximately July 2012, the Defendants advised the Plaintiff that they would establish new pricing in September 2012 that would include full commissions for the Plaintiff.

101. The Plaintiff relied on the Defendants' claim that the new pricing would include the Plaintiff's commissions in the amount of the full contracted 15% (fifteen percent).

102. Such reliance was reasonable based on Defendants pattern and practice of making full commission payments in the past.

103. The Defendant has the sole authority to set pricing and added Appendix B to the February 2013 Sales Agreement to deprive the Plaintiff opportunity to earn commissions.

104. The Defendant deprived the Plaintiff of the pricing and cost models for custom Products to Boehringer-Ingelheim Vetmedica to induce the Plaintiff to continue to expend its time and effort and valuable resources to obtain sales from Boehringer-Ingelheim Vetmedica.

105. The Defendants set the price and cost models for the custom Products to Boehringer-Ingelheim Vetmedica so that they could retain a profit, but not to pay commissions to the Plaintiff pursuant to the terms of Appendix B of the February 2013 Sales Agreement.

106. The Defendants further have denied the Plaintiff access to the costs of production so that they can unilaterally set pricing to deprive the Plaintiff of commissions yet retain a profit.

107. The Defendants misled the Plaintiff by permitting it to make sales and expend consider efforts marketing the Defendants' Products, while denying the Plaintiff the information that would have informed the Plaintiff that it would not be compensated for its efforts.

108. Defendants knew or should have known that the nondisclosure of the revised pricing and cost models falsely represented to Plaintiff that commissions would continue consistent with past practice.

109. Defendants failed to exercise reasonable care or competence in communicating the pricing and cost models to Plaintiff.

110. The Plaintiff continued to work diligently and expend considerable time and valuable resources to make additional sales to Boehringer-Ingelheim Vetmedica believing that it would earn its full commission amounts pursuant to the Sales Agreements.

111. As consideration for the repeat and ongoing sales the Plaintiff has initiated on behalf of the Defendant, the Sales Agreements otherwise state unambiguously that the Defendants agreed to pay commissions in the amount of 15% (fifteen percent) on all sales for consumable goods.

112. The Defendants refuse to pay the full 15% of gross sales commissions due and owing to PharmAseptic, pursuant to the Sales Agreements.

113. The Defendants' actions have denied the Plaintiff its commissions while the Defendants retain the fruits of Plaintiff's labor.

114. As a result of the Defendants' failure to pay commissions owed to the Plaintiff, the Plaintiff has suffered damages.

**COUNT EIGHT** (Unfair Trade Practices in violation of Gen. Stat. 42-110(b) <u>et seq.</u>)

115. Paragraphs 1-114 are incorporated by reference as if fully set forth herein.

116. In approximately July 2012, the Defendants advised the Plaintiff that they would establish new pricing in September 2012 that would include full commissions for the Plaintiff.

117. Upon information and belief, Defendants never actually intended to set pricing to pay the Plaintiff its full commission payments.

118. The Defendant has the sole authority to set pricing and added Appendix B to the February 2013 Sales Agreement to deprive the Plaintiff opportunity to earn commissions.

119. The Defendant intentionally deprived the Plaintiff of the pricing and cost models for custom Products to Boehringer-Ingelheim Vetmedica to induce the Plaintiff to continue to expend its time and effort and valuable resources to obtain sales from Boehringer-Ingelheim Vetmedica.

120. The Defendants unjustly set the price and cost models for the custom Products to Boehringer-Ingelheim Vetmedica so that they could retain a profit, but not to pay commissions to the Plaintiff pursuant to the terms of Appendix B of the February 2013 Sales Agreement.

121. The Defendants further have made concerted efforts to deny the Plaintiff access to the costs of production so that they can unilaterally set pricing to deprive the Plaintiff of commissions yet retain a profit.

122. The Defendants misled the Plaintiff by permitting it to make sales and expend consider efforts marketing the Defendants' Products, while denying the Plaintiff the information that would have informed the Plaintiff that it would not be compensated for its efforts.

123. The Plaintiff relied on the Defendants' claim that the new pricing would include the Plaintiff's commissions in the amount of the full contracted 15% (fifteen percent).

124. Such reliance was reasonable, based on Defendants' pattern and practice of making full commission payments in the past.

125. The Plaintiff continued to work diligently and expend considerable time and valuable resources to make additional sales to Boehringer-Ingelheim Vetmedica believing that it would earn its full commission amounts pursuant to the Sales Agreements.

126. As consideration for the repeat and ongoing sales the Plaintiff has initiated on behalf of the Defendant, the Sales Agreements otherwise state unambiguously that the Defendants agreed to pay commissions in the amount of 15% (fifteen percent) on all sales for consumable goods.

127. The Defendant refuses to pay the full 15% of gross sales commissions due and owing to PharmAseptic, pursuant to the Sales Agreements.

128. The Defendants' actions have denied the Plaintiff its commissions while the Defendants retain the fruits of Plaintiff's labor.

129. Pursuant to the Sales Agreements, Defendants consented such being governed by the laws of Connecticut, without regard to the conflicts of laws principles thereof.

130. The Defendants' course of conduct as alleged herein has been undertaken in the conduct of trade or commerce in Connecticut, as defined in General Statutes Section 42-110a(4).

131. Defendants violated Connecticut General Statutes Section 42-100b, et seq., by engaging in deceptive and unfair trade practices alleged herein.

132. Defendants' acts offended public policy, were unfair, immoral,unethical, oppressive or unscruplous and caused substantial injury and damages to the Plaintiff.

133. The Defendants have engaged in and continues to engage in acts and practices alleged herein when they knew or should have known that their conduct was unfair or deceptive in violation of General Statutes Section 42-110b(a).

134. Based upon the facts set forth herein, Defendants are liable to Plaintiff for compensatory as well as punitive damages, costs and attorneys fees pursuant to Connecticut General Statutes Section 42-110b, et seq.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury for every cause alleged in its complaint and every defense or claim asserted hereafter by any party.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff claims:

1. Monetary damages;
2. An order of this Court enjoining Defendants from refusing to remit Plaintiff's fully earned commissions;
3. A declaration that Plaintiff is owed its full fifteen percent commissions;
4. An order of this Court enjoining Defendants from transferring their assets to Pall Corporation or any other purchaser during the pendency of this litigation;
5. An award of reasonable attorney's fees;
6. Costs of this suit;
7. Punitive damages; and
8. Any such other relief as in law or equity as the Court deems appropriate and just.

Dated at Glastonbury, Connecticut this 30th day of December 2013.

    Respectfully submitted,

    THE PLAINTIFF,
    PHARMACEPTIC, INC.


By: /s/ Jay M. Wolman
    Jay M. Wolman ct29129
    Bruce H. Raymond ct04981
    Raymond Law Group LLC
    90 National Drive, Suite 3
    Glastonbury, CT 06033
    P: 860-633-0580
    F: 860-633-0438
    wolman@raymondlawgroup.com
    Raymond@raymondlawgroup.com