# EXHIBIT B

12/14/06
DRAFT-FOR DISCUSSION ONLY

# SALES REPRESENTATION AGREEMENT

This Sales Representation Agreement (this "Agreement"), signed this 2nd day of June 2011., and effective as of June 3rd 2011, by and between ATMI Packaging NV, a private limited liability company organized under the laws of Belgium, having a place of business at Reugelstraat 2, 3320 Hoegaarden, Belgium ("ATMI"), and Pharmaseptic, an Indiana limited liability company having a place of business at 1920 Jacobs Lane, Chesterton, IN, 46304, USA, ("Representative").

## Recitals:

**WHEREAS**, ATMI is engaged in the manufacture and marketing of the Products (defined below) and wishes to expand its market share in the Market Segment (defined below) within the Territory (defined below);

**WHEREAS**, Representative has experience and skill in sales of products similar to the Products and desires to promote, market and offer for sale the Products in the Market Segment within the Territory; and

**WHEREAS**, Representative commenced such representation as of 15th March 2010 under the terms and conditions set forth herein, and this Agreement, signed as of the date above first written, is intended to memorialize the terms of the parties which were effective as of 22nd March 2010

## Agreement:

NOW, THEREFORE, ATMI and Representative agree as follows:

1. DEFINITIONS: Initial capitalized terms used in this Agreement and not otherwise defined herein shall have the respective meanings set forth in Exhibit A attached hereto.

2. APPOINTMENT: Subject to the terms and conditions of this Agreement, ATMI hereby appoints Representative as ATMI's exclusive sales representative to accounts other than established OEM accounts in the Market Segment within the Territory for the purpose of soliciting orders for the Products, and Representative hereby accepts such appointment; provided, however, that notwithstanding the foregoing, ATMI shall be permitted, without obligation to pay a commission, to make a discount or otherwise become liable to Representative, to sell Products in the Market Segment within the Territory to (a) any OEM purchasers where such Products are an integral part of some other end item of equipment (or of a system) being sold by ATMI and/or its affiliates, and (b) any other purchaser having a principal place of business outside of the Territory even though any Products sold and delivered by ATMI and/or its affiliates may later be used or resold in the Market Segment within the Territory by such purchaser.

3. <u>TERM</u>: This Agreement shall remain in force for an initial period of one (1) year from the date this Agreement is signed, after which it shall be automatically extended from year to year for one (1) year periods unless sooner terminated in accordance with the terms and conditions of this Agreement.

4. <u>OBLIGATIONS OF REPRESENTATIVE; WARRANTY</u>: Using its best efforts, Representative shall actively and diligently promote, market and solicit orders for the Products solely in the Market Segment of the Territory from customers and potential customers, excluding in each case House Accounts. Representative hereby represents and warrants to ATMI that it has sufficient resources to actively and diligently promote, market and solicit orders for the Products in accordance with this Agreement.

5. <u>OBLIGATIONS OF ATMI</u>: ATMI shall furnish to Representative without charge, all correspondence, inquiries (both written and oral) and similar information pertaining to actual or prospective sales of Products in the Market Segment within the Territory that are received by ATMI and/or its affiliates. ATMI further agrees to supply, as needed and without charge, promotional material, literature, brochures and printed catalogs in quantities deemed reasonable by ATMI in its good faith discretion in relation to the activities of the Representative and assist in the training of the Representative's sales and support personnel as ATMI deems necessary in its good faith discretion.

6. <u>NO UNAUTHORIZED EXPENSES</u>: ATMI shall not be liable to Representative for payment of any costs or expenses incurred by Representative as a result of its acts or omissions under this Agreement, unless otherwise agreed previously in writing by ATMI. It is expressly understood that any third party engaged by Representative in accordance with Section 19 of this Agreement is engaged at Representative's own risk, expense, and supervision, and such persons shall not have any claim against ATMI for salaries, commissions, or otherwise.

7. <u>PRICING AND DELIVERY QUOTATIONS</u>: ATMI will provide quotations and prices to customers as well as delivery dates and other terms and conditions. Except with the prior written consent of ATMI in each case, Representative does not have the right to quote prices to customers other than prices and terms listed in the price list provided by ATMI to Representative from time to time. Furthermore, Representative does not have the right to quote delivery dates or other terms and conditions other than ATMI's standard terms and conditions of sale (the current copy of which ATMI will provide to Representative at its request from time to time), to customers without ATMI's prior written consent of such delivery dates or terms and conditions. Representative shall indemnify and hold ATMI harmless for any claims, losses, costs, damages or other liabilities incurred by ATMI as a result of any act or omission by Representative in breach or default of this Section 7.

8. <u>COMMISSIONS</u>: Payments made by ATMI to Representative shall be according to the following:

    a. Solely for orders for Products (except for orders from House Accounts) accepted by ATMI during the term of this Agreement in the Market Segment in the Territory as a

direct result of Representative's solicitation, ATMI shall pay commissions to Representative at either the Commission Rates on Equipment or the Commission Rates on Consumables, as applicable.

b. Only orders that are in compliance with an authorized quotation or price list supplied by ATMI, or based upon prices agreed by prior written authorization between ATMI and Representative, shall be considered for acceptance.

c. Commissions shall be computed on the Gross Revenues.

d. ATMI will, in a timely manner, supply Representative a "Salesman Copy" of each invoice sent to customers, for sales made by ATMI as a direct result of Representative's solicitation.

e. ATMI reserves the right to negotiate special, reasonable, commission rates with the Representative on sales which are below the list price if such concessions are needed in a competitive situation.

f. In the event of sales to OEM accounts where the sales process has been jointly developed, between ATMI and the Representative. ATMI shall pay commissions to the Representative, but at a reduced commission schedule which shall be agreed by both parties jointly.

g. ATMI and Representative recognize that for certain customers the Product design, location, negotiation location, or ship to location may be divided among the territories of other representatives, and in such cases commissions shall be split as follows:-
   10% of total available commission will be paid to the representative in whose territory the PO is placed.
   10% of total available commission will be paid to the representative in whose territory the equipment and/or consumables are delivered to.
   80% of total available commission is paid, at ATMI's sales managements discression, to the representative who made the sales effort to secure the business.

h. All payments from ATMI to Representative shall be made net 45 days.

9. DEDUCTIONS FROM COMMISSIONS: ATMI will deduct from Representative's commissions the following: (a) commissions previously paid on Products which have been returned by the customer or for which a credit has been issued to the customer; (b) the difference in commission resulting from credit(s) issued to customer's account for additional discounts such as "prompt pay"; (c) commissions paid on sales which become un-collectible as determined by ATMI in its reasonable discretion, and which have been reviewed between ATMI and the Representative; or (d) commissions which are due other parties due to Commission Splits as defined in section 8g above.

10. SALES OUTSIDE TERRITORY: In the event that ATMI requests in writing the assistance of the Representative for a particular sale outside of the Territory, the Representative shall be

entitled to the full sales commission, as if the sale was made within the Representative's Territory.

11. COMMISSION PAYMENT SCHEDULE: The payment of commissions is expressly conditional upon ATMI's acceptance of the order, expressly conditional upon ATMI's shipment, and expressly conditional upon ATMI receiving payment for such order. If and when these conditions are satisfied, ATMI shall pay the commission to the Representative on or before the twentieth (20th) day of the month following that month during which ATMI receives payment.

12. ADDITIONAL DUTIES: The Representative will, at a minimum, provide ATMI the following information and perform the following duties:

    a. Provide: (i) quarterly sales forecast at the end of each calendar quarter to identify projected sales in the following quarter, and (ii) no later than October 15 of each calendar year, provide a projected sales forecast for the following calendar year.

    b. Provide quarterly Territory market information and end-user name on each request for quotation.

    c. Maintain a running sales prospect list, showing probability of sales and estimated order date.

    d. Participate and attend regional trade shows. In the event that ATMI requests that Representative exhibit products, present written and oral presentations or undertake other marketing activities that the parties agree, in good faith, are beyond ordinary participation in a trade show, Representative shall comply with ATMI's requests and ATMI shall reimburse Representative for its actual, out-of-pocket expenses for such extraordinary activities, subject to pre-approval by ATMI for expenditures in excess of $250 per trade show and reasonable documentation of expenses in accordance with ATMI's practices.

    e. Subject in part to ATMI's training obligations pursuant to Section 5, ensure that its sales and service personnel are properly trained on the Products.

    f. Promptly follow up and report to ATMI on all leads provided.

    g. Any additional reasonable sales forecasts and appropriate reports relating to solicitation of orders and the status of such orders and other pertinent marketing information requested by ATMI.

    h. Inform ATMI of any credit information Representative receives regarding any customer or prospective customer.

13. CONFIDENTIAL INFORMATION: Representative shall promptly execute and deliver ATMI's Confidential Disclosure Agreement in the form attached as Exhibit C hereto (the "CDA"). Any breach of the CDA shall be a material breach of this Agreement.

Representative shall acquire no rights to any of ATMI's intellectual property; provided, however, that subject to the terms and conditions of this Agreement ATMI hereby licenses to Representative during the term of this Agreement the use of ATMI's trade names or logos solely for the purposes of this Agreement. Representative shall identify such trade names or logos as ATMI's when used and shall report to ATMI its use thereof. This Paragraph shall not survive the termination of this Agreement.

14. PROHIBITED ACTS: Representative shall not be an agent of or otherwise affiliated with any person or entity deemed by ATMI to be a competitor without notifying, and receiving written consent from, ATMI at least sixty (60) days prior to soliciting orders from or on behalf of any such competitor. Representative shall supply ATMI with a full and complete list of companies for which Representative acts as an agent within the Territory.

15. TERMINATION: Either party has the right to terminate this Agreement at any time with or without cause by providing not less than ninety (90) days written notice ("Termination Notice") to the other party of its election to terminate. In the event Termination Notice is given or this Agreement otherwise expires, Representative shall remit forthwith to ATMI all technical documentation, manuals, sales brochures, videos and other promotional material and literature and any other Confidential Information (as defined in the CDA) of ATMI relating to the promotion, marketing or sale of the Products, and shall neither retain nor disseminate to any person or entity copies thereof, all of which shall remain the property of ATMI at all times during the term of this Agreement and thereafter.

16. ATMI'S DUTIES AFTER TERMINATION NOTICE:

    a. If this Agreement is terminated by ATMI, ATMI's sole duty to the Representative is to pay any unpaid commissions, subject to deductions under Section 9, for orders accepted by ATMI prior to the date the Termination Notice is given and ninety (90) days thereafter, provided that the shipment occurs within one hundred and eighty (180) days of the actual termination date, and further provided that if Representative did not perform its obligations under this Agreement, ATMI shall not pay commissions on orders received after the Termination Notice.

    b. If this Agreement is terminated by Representative, ATMI shall pay commission to the Representative on all sales shipped prior to or on the date the Termination Notice is given and ATMI shall not pay commission to the Representative for sales shipped after the date the Termination Notice is given.

17. REPRESENTATIVE'S DUTIES AFTER TERMINATION NOTICE: ATMI shall have the right to request Representative to call on specific accounts, for specific purposes at any time after the date the Termination Notice is given but prior to termination of this Agreement. The Representative shall deliver to ATMI all data available on any current sales or lead activity in progress and data on any possible future leads that the Representative may have in its possession.

18. <u>INDEMNITY</u>: Representative agrees to defend, indemnify and hold ATMI harmless from and against any and all losses, costs, damages, liabilities, expenses (including reasonable attorney's fees), claims or suits arising out of or related to any negligent acts or omissions of Representative. ATMI agrees to defend, indemnify and hold Representative harmless from and against any and all losses, costs, damages, liabilities, expenses (including reasonable attorney's fees), claims or suits arising out of or related to any negligent acts or omissions of ATMI.

19. <u>ASSIGNMENT</u>: This Agreement and any rights and duties hereunder may not be assigned, delegated or otherwise transferred (whether by merger, consolidation, operation of law or otherwise) by Representative without ATMI's prior written consent in each instance.

20. <u>SEVERABILITY</u>: If one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalid, illegal, or unenforceable portion shall not affect any other provisions of this Agreement. This Agreement shall be construed as if such invalid, illegal, or unenforceable provisions had never been contained herein.

21. <u>CONSTRUCTION</u>: This Agreement constitutes the entire Agreement between the parties and shall supersede all previous communications, representations, and agreements, either verbal or written, between the parties hereto with respect to the subject matter hereof.

22. <u>AMENDMENTS</u>: This Agreement may only be amended by written agreement between the parties, except that ATMI has the right to unilaterally change or modify the price list upon notice to Representative. ATMI will endeavor to give Representative sixty (60) days notice of any change or modification to the price list.

23. <u>GOVERNING LAW</u>: This Agreement and any matters arising out of or relating thereto shall be controlled and construed under the laws of Connecticut, without regard to the conflicts of laws principles thereof.

24. <u>NON-COMPETITION; NON-SOLICITATION</u>. In consideration of the various agreements of ATMI set forth in this Agreement:

   a. during the term of this Agreement, Representative shall not, either on its own or through any affiliate, joint venture or by any other entity in which Representative has any interest whatsoever, develop, make, assemble, have made, use, distribute, promote, market, or sell the Products or any derivatives of the Products, or any products which are substantially the same as, or competitive with, the Products, or be financially interested in or otherwise assist with the development, making, assembly, use, distribution, promotion, marketing or sale of the Products, any derivatives of the Products or any other such competitive products;

   b. for six (6) months for each year (or portion of a year) of the term of this Agreement following the expiration or earlier termination of this Agreement, if this Agreement is

terminated by Representative for other than ATMI's breach or by ATMI for Representative's breach, Representative shall not, either on its own or through any affiliate, joint venture or by any other entity in which Representative has any interest whatsoever, develop, make, assemble, have made, use, distribute, promote, market, or sell the Products or any derivatives of the Products, or any products which are substantially the same as, or competitive with, the Products, or be financially interested in or otherwise assist with the development, making, assembly, use, distribution, promotion, marketing or sale of the Products, any derivatives of the Products or any other such competitive products;

c.  for six (6) months following the expiration or earlier termination of this Agreement, if this Agreement is terminated by ATMI without cause, and provided the Representative has worked for ATMI pursuant to the terms of this Agreement for a least one (1) year, Representative shall not, either on its own or through any affiliate, joint venture or by any other entity in which Representative has any interest whatsoever, develop, make, assemble, have made, use, distribute, promote, market, or sell the Products or any derivatives of the Products, or any products which are substantially the same as, or competitive with, the Products, or be financially interested in or otherwise assist with the development, making, assembly, use, distribution, promotion, marketing or sale of the Products, any derivatives of the Products or any other such competitive products; and

d.  Representative shall not, directly or indirectly, recruit, divert, solicit the employment or hire the employees or consultants of ATMI and its affiliates during the term of this Agreement and for a period of six (6) months thereafter; provided, however, that this Section shall not preclude Representative from hiring any employee or consultant who has been terminated by ATMI and its affiliates prior to commencement of employment discussions between Representative and such employee.

**IN WITNESS WHEREOF**, the undersigned have caused this Sales Representation Agreement to be executed by an authorized representative as of the date above first written.

**ATMI Packaging NV**

By: _____
Name: Derek Pendlebury
Title: Sales Director

**Pharmaseptic**

By: _____
Name: John Swibes
Title: Owner

EXHIBIT A

DEFINITIONS

For purposes of this Agreement, the following terms shall have the meanings respectively assigned thereto in this Exhibit A:

1. "Commission Rates on Consumables" means fifteen percent (15%) on Gross Revenues for all consumables sold by the Representative.

2. "Commission Rates on Equipment" means ten percent (10%) on Gross Revenues for all equipment sold by the Representative.

3. "Gross Revenues" means revenues actually received by ATMI less (i) trade and quantity rebates, (ii) credits, discounts or allowances given or made for rejections or returns of any previous sales, (iii) any tax, duties or other governmental charges paid by ATMI on such sales, and (iv) any charges in connection with freight and insurance.

4. "House Accounts" means Sartorius/Stedim Biotech, Sigma Aldrich Fine Chemicals, West Pharmaceuticals, Invitrogen, Millipore Corporation, Becton Dickinson, Entegris, Helvoet Pharma, VWR and VWR International.

5. "Market Segment" means all biopharmaceutical research and manufacturing companies in the Territory, excluding the House Accounts.

6. "OEM Accounts" means a person or entity that purchases Products for the purpose of adding value by incorporating Products as a component of a larger system or product that is sold by such person or its affiliates.

7. "Products" means ATMI's Newsafe™ Contained Powder Transfer Bags & Accessories, Newmix™ Single-Use Mixing Systems, Nucleo™ Disposable Bioreactor, all Levtech™ Branded Disposable Mixing Systems and Newform™ Cleansteam Bags & Accessories. ATMI in its discretion may add other products that ATMI wishes Representative to market to the Market Segment in the Territory, and such added products shall be considered "Products" hereunder.

8. "Territory" means the states and territories of Michigan, Indiana, Ohio, Kentucky, Tennessee and the following 2 specific accounts in the State of Iowa, Boehringer Ingelheim Vetmedica in Ft Dodge Iowa, and the Pfizer facility in Charles City Iowa.

## EXHIBIT B
## Price List

Separate, electronic and hard copy price lists will be supplied once this agreement is effective

## EXHIBIT C
## Mutual CDA

If a mutual CDA has already been entered into it will be attached here. If not, a copy will be attached to this document for signature by both parties.